THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ROMNEY ADAMS, Defendant-Appellant.

Third District   No. 3—87—0135

Opinion filed May 2, 1988.—Rehearing denied June 13, 1988.

Stephen Omolecki, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Masters, State's Attorney, of Joliet (Judith Z. Kelly, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

The defendant, Romney Adams, was charged by indictment with the offenses of delivery of a controlled substance, armed violence, and unlawful use of firearms by a felon. Following a jury trial in the circuit court of Will County, Adams was found guilty of these three offenses as well as possession of a controlled substance and was sentenced to concurrent terms of 14, 10, and 4 years' imprisonment.

Adams appeals from the judgment on the following grounds: first, that no probable cause existed for the search of his vehicle and his subsequent arrest; second, that certain improprieties existed in the introduction of testimony at trial; third, that the prosecutor's arguments to the jury denied him a fair trial; and fourth, the three convictions violated the "one-act, one-crime" principle. Upon review of the record in this case, we hold that no probable cause existed for the search and arrest. On that basis, only the facts necessary for our discussion of that issue will be presented and the alleged errors at trial need not be discussed.

Officer Phillip Valera, a Joliet police officer on assignment with the Metropolitan Area Narcotics Squad, testified that he had been contacted by a confidential informant who told him that Adams was driving from Kentucky to Will County with some cocaine. This information was received on the evening of October 6, 1986, and was the

first information from this informant that led to an arrest. Valera had other conversations with this informant, but there was no claim that he had given any previous reliable information. Valera told the informant he would be paid if the information led to an arrest and the informant was subsequently paid.

The informant told Valera that he received the information from Adams himself though that fact was not included in Valera's report. The informant did not say when his conversation took place with Adams but that Adams told him he was to meet Frank Collins in Kentucky and bring back the cocaine. Valera ran a computer check on the informant and found no criminal record. Valera knew that Collins had been arrested on a cocaine-related charge and was suspected of being a major cocaine distributor in the Will County area. The informant also stated that Adams might be armed with a handgun and that he had served time for shooting someone. Valera checked and found that Adams had been in prison for manslaughter. The informant did supply a description of Adams' car and the license plate number.

Valera attempted to get a warrant on the basis of this information but none was issued. Valera was told to corroborate the fact that the vehicle was coming back from Kentucky. Valera never determined that Adams had been in Kentucky, but, rather, he set up surveillance outside Lowell, Indiana, on Interstate 65. Lowell is located in northern Indiana. Valera observed Adams' vehicle traveling northbound on Interstate 65, recognized Adams as the driver, and followed him until the roadblock stop in Will County. Valera testified that Adams travelled at a speed of 65 miles per hour in Indiana and between 55 and 65 in Illinois.

At the roadblock stop, several officers approached Adams' vehicle with their guns drawn. No arrest or search warrant was presented nor was any traffic citation issued for the excessive speed. However, Valera testified that the speeding was not the reason for the stop. Valera further indicated that Adams was not under arrest at the time of the stop and that the police were merely conducting an investigation. Adams was accompanied in the car by a female passenger.

Both occupants of the vehicle were instructed to exit from the passenger side of the vehicle. As Adams exited the car, the female's purse fell to the pavement and a loaded handgun fell out. Also in the purse were two plastic straws and a blue container with a white powdery substance believed to be cocaine. Both Adams and his female companion were arrested. A further search of the car at the police station uncovered more cocaine packed in a duffel bag in the trunk, in the glove compartment, and in the collar of Adams' coat.

Adams was subsequently tried and convicted of the three offenses. Our sole inquiry here is whether probable cause existed at the time of the search and seizure to bring the search within constitutional parameters. Naturally, the contraband discovered after the stops is not to be considered because probable cause cannot be constructed from evidence discovered after the fact.

■ Our inquiry here extends not only to the probable cause for the search but also for the arrest. Although Valera testified that no arrest took place at the time of the stop, merely an investigation, there is no question that an arrest had taken place.

> "A person is 'seized' only when his or her freedom of movement is restrained by an officer's physical force or show of authority. A seizure is determined by ascertaining whether, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave. Circumstances that might suggest that a seizure has occurred include, but are not limited to: (1) the threatening presence of several officers; (2) the display of a weapon by an officer; (3) the physical touching of the citizen; and (4) the use of language or tone of voice indicating that compliance with the officer's request might be compelled." R. Ruebner, Illinois Criminal Procedure 5-6 (1987).

■ Both the intent of the police officer and the understanding of the arrestee are essential elements of the arrest, but the understanding of the arrestee is not measured against the arrestee's subjective beliefs but rather against " 'what a reasonable man, innocent of any crime, would have thought had he been in the defendant's shoes.' " (*People v. Wipfler* (1977), 68 Ill. 2d 158, 166, 368 N.E.2d 870, 873 quoting *Hicks v. United States* (D.C. Cir. 1967), 382 F.2d 158, 161.) An examination of the facts in this case can only lead to one conclusion. There were several officers who approached the vehicle with their guns drawn. In that instance, a reasonable person would not feel free to leave. Therefore, at the time of the stop, an arrest had been effected on Adams and his female companion.

■ In examining whether probable cause exists for warrantless arrests or searches, the facts and circumstances within the officer's knowledge must be sufficient to warrant a reasonable man to believe that an offense has been committed and that the person arrested has committed it, or in the case of a search, that a crime has been committed and that the evidence of the crime is in the place to be searched. The probability that criminal activity has occurred, as opposed to proof beyond a reasonable doubt, is the standard to deter-

mine whether probable cause existed in a specific case. This determination is made through commonsense consideration of the facts of the case and not by technical legal rules. Moreover, in later assessing whether probable cause existed, a purely objective inquiry into the reasonableness of the officer's conduct is utilized; that is, in retrospect it is irrelevant what the officer subjectively believed. R. Ruebner, Illinois Criminal Procedure 3-4 (1987).

In *People v. Tisler* (1984), 103 Ill. 2d 226, 469 N.E.2d 147, the Illinois Supreme Court adopted the "totality of the circumstances" approach established by the Supreme Court of the United States in *Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317. Although establishing the existence of each element of the two-pronged test of veracity of the informant and his basis of knowledge has been abandoned, they are still factors to be considered in determining the "totality of the circumstances." *Illinois v. Gates* (1983), 462 U.S. 213, 238, 76 L. Ed. 2d 527, 548, 103 S. Ct. 2317, 2332.

The prosecution has called our attention to *People v. Beck* (1988), 167 Ill. App. 3d 412, decided after the instant case was taken under advisement. According to the prosecution *Beck* distinguishes *Tisler* and approves the warrantless arrest and search. We believe the facts in *Beck* are quite dissimilar to those in the instant case and the dissimilarities support the result we have reached. For instance, the court in *Beck* relied significantly on the informant's history of having provided trustworthy and accurate information on at least four prior occasions. In the instant case no particulars were provided as to the time and place where the automobile would be, where it had been or the source of the informant's information.

In the present case, no reading of the facts can lead to a reasonable conclusion that probable cause existed to either arrest the defendant or search his vehicle. The trial court improperly concluded that Valera's informant was classified as a citizen informant. The informant was told he would be paid if the information led to an arrest and, in fact, he was paid. Therefore, the informant's information must be examined to determine whether it supplied the requisite probable cause under the totality of the circumstances. First, we note that the informant had not supplied any previously reliable information. Second, he never stated when the conversation took place in which he gained access to the information. Third, no corroboration was ever secured to substantiate the claim that the Kentucky trip was ever made. The fact that Valera conducted surveillance on I-65 in northern Indiana is hardly definitive. The conclusion that Adams came from Kentucky based on his presence on I-65 is not reasonable. On the basis of

these facts, we cannot conclude that the informant's tip supplied the requisite probable cause.

■ We find just as tenuous any justification for the guns-drawn arrest. The informant's statement that Adams was possibly armed on the basis of a past conviction for manslaughter is inconsequential. If we were to uphold this as a basis for the arrest, then every defendant ever convicted of a crime in which a gun was involved could be subject to such police conduct in travelling the nation's roads. We will not use this case to establish such a precedent. The bottom line is that the information supplied to Valera was insufficient to establish probable cause for either the arrest or the search. Any evidence obtained through this search is, therefore, inadmissible. Since the remaining evidence is insufficient to support a conviction, the conviction is reversed.

For the foregoing reasons, the judgment of the circuit court of Will County is reversed.

Reversed.

HEIPLE and WOMBACHER, JJ., concur.