THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FRANCES McKINNEY, Defendant-Appellant.

First District (4th Division)    No. 1—93—1561

Opinion filed January 25, 1996.

Elizabeth J. Kennedy and Donald L. Soulliere, both of Cabrini-Green Legal Aid Clinic, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Latisha Foster, Assistant State's Attorneys, of counsel), for the People.

JUSTICE THEIS delivered the opinion of the court:

The appellant, Frances McKinney (Frances), appeals her conviction for first degree murder. At the time of her arrest, Frances was a 17-year-old unwed mother. After Frances gave a detailed confession, police charged her with the murder of her eight-month-old baby, Keenan McKinney. Frances contends that this court should reverse her conviction because the trial court's denial of Frances' motion to quash her arrest and suppress evidence was error, as authorities seized Frances in violation of the fourth amendment. We reverse and remand for further proceedings.

On the afternoon of August 8, 1991, Frances and her baby visited the apartment of her boyfriend, Lorne Johnson (Johnson). Appellant's mother, Claudia McKinney, called Frances at Johnson's apartment, requesting that she come home to complete her chores. Prior to leaving, Frances went into Johnson's rest room to fix her hair. The baby was alone with Frances in the rest room. Frances then returned to her mother's home, leaving the baby with Johnson, Johnson's sister Talena and Talena's boyfriend.

Frances completed her chores and returned to Johnson's apartment approximately one-half hour later. Frances spent the evening at Johnson's apartment, leaving the baby in the care of both Johnson and his mother, Mildred Wade, at different points in the evening. Johnson left the apartment in the early evening, returning after midnight. After Johnson arrived home, he instructed Frances to sleep in another room. Frances obliged Johnson's request, leaving the baby with Johnson in his bedroom. On the morning of August 9, 1991, Frances went to wake the baby at Mildred Wade's request. Frances found the baby in Johnson's brother's bed unconscious. The baby was pronounced dead upon arrival at the hospital, the cause of death unknown.

After asking Johnson and his family to go to the Area 6 police station, Detectives Ryan and Keenan visited Claudia and Frances McKinney. After a brief discussion at the McKinney home, the detectives asked Frances, in an allegedly forceful tone, to accompany them to the police station. Frances agreed and the detectives drove Frances and Claudia to the station in their police car. The detectives did not have a warrant for Frances' arrest. Upon arrival at the station,

the police separated Frances and Claudia, taking Frances to an interrogation room.

Frances was in the interrogation room for approximately 21 hours prior to her arrest. Frances claimed that during this time officers questioned her about the baby's death. In contrast to the State's claim that Frances was free to leave, Frances testified that the police used keys to enter and exit the interrogation room and that she had to ask to use the bathroom. In addition, the defense presented unrebutted testimony that the police denied Claudia McKinney's requests to see Frances. Frances slept on the floor of the interrogation room without a pillow or blanket. The parties disagreed as to when Frances was given her *Miranda* rights. Frances claimed that she felt that she was not free to leave the police station at any time during her stay there.

In response, the State claimed that Frances remained at the station voluntarily to await the autopsy results. The autopsy revealed that the infant suffered numerous internal and external injuries caused by blunt trauma. Past episodes of abuse were also apparent. Confronted with those results, Frances confessed to physically abusing the child while she was in Johnson's bathroom on August 8, 1991. Frances' detailed confession was consistent with the injuries found in the autopsy. Armed with probable cause, the police then arrested Frances.

Assistant State's Attorney Shauna Boliker (Boliker) testified that she interviewed Frances on August 11, 1991, at approximately 1:45 a.m. Approximately 34 hours after arriving at the police station, Frances signed the written confession prepared by Boliker. Boliker testified that Frances never complained about the behavior of the police and stated that no one offered her anything in exchange for her confession.

Frances was indicted for first degree murder. Frances brought a motion to quash her arrest and suppress her confession, which the trial court denied. The trial court rejected Frances' claim that she was illegally detained. Frances was found guilty of first degree murder. On appeal, Frances contends that she was seized in violation of the fourth amendment. We agree.

Frances contends that she was unlawfully detained when the police escorted her from her home. Alternatively, Frances argues that her detention at the police station constituted an unlawful arrest. Therefore, Frances argues, the trial court should have suppressed the evidence of her confession.

Upon review, we must uphold the trial court's determination that no illegal arrest occurred unless the ruling was manifestly er-

roneous. (*People v. Graham* (1991), 214 Ill. App. 3d 798, 573 N.E.2d 1346.) "[W]e will consider as true only the testimony of the police officers, except where defendant's testimony was unrebutted, so as not to substitute our judgment for that of the trial court on issues of credibility." *People v. Young* (1990), 206 Ill. App. 3d 789, 800, 564 N.E.2d 1254, 1262, citing *People v. Dowdell* (1980), 81 Ill. App. 3d 266, 268, 401 N.E.2d 295, 296.

■ To quash an arrest, Frances must show both that a seizure occurred and that it was illegal. (*Graham*, 214 Ill. App. 3d 798, 573 N.E.2d 1346.) A person is seized in violation of the fourth amendment if a reasonable person would have believed, in light of all circumstances, that she was not free to leave. (*People v. Stofer* (1989), 180 Ill. App. 3d 158, 534 N.E.2d 1287.) In determining whether a reasonable person would believe she was free to leave, a court must look to all the circumstances surrounding the incident which may indicate a seizure has occurred. *People v. Adams* (1988), 169 Ill. App. 3d 284, 523 N.E.2d 1103.

■ First, Frances contends that the police seized her at her residence without probable cause or a search warrant in violation of the fourth amendment. The State concedes that the police did not have probable cause to arrest Frances until her confession. Frances argues that the detectives came to her home, told her to come down to the station for questioning in a forceful tone, drove her to the station in the back seat of their car and never informed her she was free to refuse or drive herself. The police deny using a forceful or authoritative tone with Frances.

Frances relies heavily upon two cases in which minors were involved in support of her contention that a reasonable person in her position would feel compelled to accompany the police to the station. (See *People v. R.B.* (1992), 232 Ill. App. 3d 583, 597 N.E.2d 879; *People v. Vega* (1990), 203 Ill. App. 3d 33, 560 N.E.2d 983.) We find these cases to be readily distinguishable from the instant case. While some of the factors cited by Frances were present in both *R.B.* and *Vega*, they were not dispositive of the holdings. Rather, both cases involved physical coercion and resistance on the part of the defendants.

In *R.B.*, the defendant presented unrebutted testimony that the police grabbed the defendant in his home and held his shoulders all the way to the car. (*R.B.*, 232 Ill. App. 3d 583, 597 N.E.2d 879.) In *Vega*, the officers grasped the defendant's arm, telling him he was going to the station despite his protests. (*Vega*, 203 Ill. App. 3d 33, 560 N.E.2d 983.) In the instant case, however, the showing of authority present in *R.B.* and *Vega* is conspicuously absent.

Under the facts in this case, we find that a reasonable person

would not have felt compelled to join the officers. Other than the forceful tone Frances claims the detectives used, which the State successfully rebutted, there is no indication that the detectives' behavior compelled Frances to accompany them. Furthermore, it is unlikely that the officers went to Frances' home with the intention of arresting her, as the cause of the child's death was still unknown. (See *People v. Wicks* (1992), 236 Ill. App. 3d 97, 603 N.E.2d 594.) There was no formal declaration of arrest, nor were routine arrest procedures employed. Finally, the State's explanation as to why Frances would agree to accompany them to the station, to assist their investigation of her son's death, was reasonable. Therefore, we cannot conclude that the trial court's determination that Frances voluntarily accompanied the police was manifestly erroneous.

■ This determination, however, does not end our inquiry. While Frances may have accompanied the police to the station voluntarily, her initial voluntary presence would not legitimize subsequent improper police conduct. *Young*, 206 Ill. App. 3d 789, 564 N.E.2d 1254.

We find that the trial court erred in ruling that Frances was not in custody prior to the time of her confession on August 10, 1992. We note that the trial court devoted very little attention to Frances' stay at the station, focusing instead upon the detectives' visit to Frances' home. The trial court mentioned Frances' extended station stay in only one sentence of its ruling, offering no discussion of the substantial evidence that indicated that Frances was involuntarily detained. We believe this evidence is significant.

The State claims that Frances was at the station for such a long time prior to her arrest because she agreed to remain until the results of the autopsy became available. While we appreciate the challenges faced by officers, we find the State's claim that Frances would prefer to spend the evening on the station floor instead of at her home to be without credence. In finding that the lack of a plausible explanation for extended station stays indicated an unlawful detention, the court in *People v. Walls* stated:

> "We are not unsympathetic to the plight of the police in investigating crimes of this sort. Yet we cannot condone the infringement of constitutional rights and find it difficult to believe, as the State must necessarily contend, that citizens typically agree to spend extended periods of time at police stations, kept in small windowless rooms, waiting for the police to conduct their investigations and obtain probable cause for their arrest." *People v. Walls* (1991), 220 Ill. App. 3d 564, 579, 581 N.E.2d 264, 274.

We acknowledge that the duration of a station stay is not always

determinative of whether there was an illegal detention. For example, in *People v. Hill* (1995), 272 Ill. App. 3d 597, 650 N.E.2d 558, this court agreed that the defendant voluntarily remained in the police station for 23 hours where the State proffered a reasonable explanation for the extended stay. In *Hill*, six officers testified that the defendant asked to stay at the station for his own safety, as he feared gang retaliation. *Hill*, 272 Ill. App. 3d 597, 650 N.E.2d 558.

The instant case, however, more closely resembles the facts in *People v. Young* (1990), 206 Ill. App. 3d 789, 564 N.E.2d 1254, where an illegal detention was found. In *Young*, the defendant initially agreed to accompany the police at their request for questioning. When he arrived, he was placed in a small interrogation room where he was questioned for a brief period of time. During his initial questioning, defendant never implicated himself. Yet the defendant remained overnight while the police collected information adequate to provide probable cause for his arrest. Defendant spent the night in a room without a phone, washroom or sleeping facilities. The police never informed defendant that he was free to leave or offered an adequate explanation as to why the defendant would agree to remain overnight. Thus, the court found that the defendant's 12-hour stay at the police station amounted to an illegal detention.

Similarly, the totality of the circumstances surrounding Frances' stay at the police station indicates that she reasonably felt compelled to remain at the station. Upon her arrival at the station, the police separated Frances from her mother and placed her in an interrogation room. The unrebutted testimony of defense witnesses reveals that the police denied her mother's requests to speak to Frances until after Frances gave a statement. Frances testified, and the officers did not deny, that the officers used a key when entering and exiting the interrogation room. Instead of roaming about freely, Frances asked permission to use the rest room. Despite the fact that Frances had not implicated herself, Frances spent the evening sleeping on the tile floor of the interrogation room.

The State argues that no one told Frances that she had to remain at the station. Furthermore, the police neither handcuffed nor fingerprinted Frances. These factors do not negate the fact that the officers created an atmosphere in which Frances would reasonably believe that she was not free to leave. (See *People v. Barlow* (1995), 273 Ill. App. 3d 943, 654 N.E.2d 223.) Rather, the circumstances surrounding Frances' stay at the station indicate that she was not free to leave. (*Young*, 206 Ill. App. 3d 789, 564 N.E.2d 1254.) As such, we reverse the ruling of the trial court and find that Frances was illegally detained without probable cause.

■ This determination, however, is not dispositive of the issue of whether Frances' confession should have been admitted. (*People v. Foskey* (1990), 136 Ill. 2d 66, 554 N.E.2d 192.) A court should suppress a confession only where both an illegal arrest has occurred and the police obtained the confession by exploiting the illegality of the arrest. (*People v. Stofer* (1989), 180 Ill. App. 3d 158, 534 N.E.2d 1287.) In evaluating the possibility of a tainted confession, the court should consider the following factors: (1) the proximity in time between the arrest and the confession; (2) the existence of intervening circumstances; (3) whether *Miranda* warnings were given; and (4) the purpose and flagrancy of the police misconduct. (*Foskey*, 136 Ill. 2d 66, 554 N.E.2d 192.) The burden is on the State to show sufficient attenuation between the illegal arrest and subsequent confession, rendering the confession admissible. *Foskey*, 136 Ill. 2d 66, 554 N.E.2d 192.

■ In the instant case, the trial court concluded that Frances' arrest was legal. No evidence was produced at trial concerning attenuation. As such, the trial court did not address whether Frances' confession was sufficiently attenuated from the illegal arrest to purge the taint of illegality. Therefore, we remand this cause for a hearing to determine whether sufficient attenuation existed to warrant the admissibility of Frances' confession. See *People v. Barlow* (1995), 273 Ill. App. 3d 943, 654 N.E.2d 223.

Reversed and remanded.

HOFFMAN, P.J., and CAHILL, J., concur.