January 29, 1999

No.  3--98--0160

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 1998

THE PEOPLE OF THE STATE OF )  Appeal from the Circuit Court

ILLINOIS, )  of the 12th Judicial Circuit,

)  Will County, Illinois,

Plaintiff-Appellee, )

)

v. )  No.  97--CF--4744

)

ANTHONY E. RAINEY, )  Honorable

)  Rodney Lechwar,

Defendant-Appellant. )  Judge, Presiding.

_________________________________________________________________

JUSTICE SLATER delivered the opinion of the court:

_________________________________________________________________

Defendant Anthony E. Rainey was convicted of unlawful possession of a controlled substance with intent to deliver and was sentenced to a term of three years' imprisonment.  On appeal, defendant contends that the trial court erred in denying his motion to suppress.  We reverse.

Facts

Joliet police officer Robert O'Dekirk testified at the suppression hearing that he and his partner, officer Dupuis, were on patrol in an unmarked squad car at 8:30 or 9 p.m. on September 14, 1997.  O'Dekirk saw a group of four or five people standing around talking to each other in the parking lot of King Gas and he observed them for 20 to 30 seconds.  O'Dekirk noted that they were standing away from the gas pumps and the pay window in a corner of the parking lot.  He characterized their activity as "loitering."  There are "no trespassing" signs posted at the gas station, but no one had complained about the group's presence.  There had been complaints of gang and drug activity in the area in the past, but no one had reported such activity that evening.

As O'Dekirk was watching the group a marked police car pulled into the parking lot of King Gas on a unrelated domestic disturbance call.  O'Dekirk saw the defendant step away from the group and turn his back to the marked car.  The defendant, who was then facing O'Dekirk, took his right hand and placed "items" inside his mouth.  O'Dekirk described defendant's actions as, in one movement, wiping his mouth and attempting to stretch or yawn.  O'Dekirk admitted that he did not know what defendant had placed in his mouth; it could have been a piece of gum for all he knew.  However, O'Dekirk had made hundreds of narcotics arrests during his four years as a Joliet police officer and in his experience it was very common for persons to attempt to hide small amounts of narcotics in their mouths.  In O'Dekirk's opinion, the defendant's actions were consistent with those of a person in possession of narcotics.

After O'Dekirk pulled into the gas station, officer Dupuis got out of the car and called to defendant.  As defendant came to the car he "dropped his head."  Dupuis placed one hand on the back of defendant's head and the other on his throat and told defendant to open his mouth.  When defendant did not comply, he was again ordered to open his mouth.  O'Dekirk tried to help Dupuis but they could not get the defendant's mouth open.  The defendant then spit the items into his hand and dropped them on the ground.  The three packages recovered at the scene contained 0.7 grams of cocaine.

O'Dekirk also testified that when the police suspect that a person has drugs hidden in his mouth, they try to keep the person's head forward.  This is to prevent the suspect from cocking his head back to swallow the items, leading to lost evidence and risk to the suspect's life.

At the conclusion of the hearing, the trial court denied defendant's motion to suppress.  The court found that the police officers had probable cause to believe defendant was committing a criminal offense based on their experience and the defendant's actions in turning away from the approaching police car and his "furtive" movements in concealing objects in his mouth.  The court also ruled that the police were justified in grabbing defendant's throat to prevent the destruction of evidence and to prevent defendant from harming himself.  Following a stipulated bench trial, the defendant was convicted of unlawful possession of a controlled substance with intent to deliver.

Analysis

The sole issue in this case is whether the seizure and search of defendant was in violation of the fourth amendment to the United States Constitution.  That amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const., amend. IV.  Reasonableness under the fourth amendment generally requires a warrant supported by probable cause.  
People v. Flowers
, 179 Ill. 2d 257, 688 N.E.2d 626 (1997).  However, a warrantless arrest is valid if it is supported by probable cause.  
Beck v. Ohio
, 379 U.S. 89, 13 L. Ed. 2d 142, 85 S. Ct. 223, (1964); 
People v. Montgomery
, 112 Ill. 2d 517, 494 N.E.2d 475 (1986); see 725 ILCS 5/107-2(c) (West 1996).  Probable cause to arrest exists when circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution to believe an offense has been committed and that the individual arrested has committed it.  
People v. Hoover
, 250 Ill. App. 3d 338, 620 N.E.2d 1152 (1993); 
People v. Earnest
, 224 Ill. App. 3d 90, 586 N.E.2d 449 (1991).  Whether there is probable cause to justify an arrest depends on the totality of the circumstances known to the officer at the time of the arrest (
People v. Bell
, 96 Ill. App. 3d 857, 421 N.E.2d 1351 (1981)), including the officer's factual knowledge and his prior law enforcement experience (
People v. Earley
, 212 Ill. App. 3d 457, 570 N.E.2d 1235 (1991)).  Probable cause to arrest does not require the degree of proof necessary for conviction, but more than a hunch or mere suspicion is required.  
Bell
, 96 Ill. App. 3d 857, 421 N.E.2d 1351.  The touchstone in fourth amendment analysis is always the reasonableness of the particular governmental intrusion, which depends on balancing the public interest in crime prevention against the individual's right to personal security free from arbitrary interference by police officers.  See 
People v. Gonzalez
, 184 Ill. 2d 402, ___ N.E.2d ___ (1998).

Whether probable cause exists is a mixed question of law and fact, and the trial court's ruling on a motion to suppress will not ordinarily be reversed unless it is manifestly erroneous.  
In re D.G.
, 144 Ill. 2d 404, 581 N.E.2d 648 (1991).  However, where, as here, neither the facts nor the credibility of the witnesses is contested, the determination of whether probable cause exists is a legal question subject to 
de
 
novo
 review.  
In re D.G.
, 144 Ill. 2d 404, 581 N.E.2d 648.

Although not determinative, we believe that 
People v. Wardlow
, 183 Ill. 2d 306, 701 N.E.2d 484 (1998), is instructive.  In 
Wardlow
 the defendant had been standing on a city street in a high crime area.  When he observed a police vehicle approaching he fled, carrying a white bag under his arm.  Police caught the defendant, performed a 
Terry
 pat down search and found a gun in the bag.  Our supreme court held that neither a person's mere presence in an area where drugs are sold, nor sudden flight alone, will justify a 
Terry
 stop.  The court noted that the police were not responding to a report of suspicious activity in the area, and the defendant had given no outward indication of involvement in illicit activity.  The court pointed out that it had recently emphasized "the importance of protecting the freedom to engage in such harmless activities as 'loafing, loitering, and nightwalking' and other personal liberties of citizens, including the right to travel, to locomotion, to freedom of movement, and to associate with others."  
Wardlow
, 183 Ill. 2d at 313, 701 N.E.2d at 487 quoting 
City of Chicago v. Morales
, 177 Ill. 2d 440, 459, 687 N.E.2d 53, 64 (1997).

The instant case differs from 
Wardlow
 in two significant respects.  Defendant Rainey did not flee from the police, he merely turned away from the approaching squad car.  Such conduct would seem to be a less potent indicator of criminal activity than flight.  On the other hand, Rainey placed something in his mouth in a manner which the trial court characterized as furtive.  "[D]eliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest."  
Sibron v. New York
, 392 U.S. 40, 66-67, 20 L. Ed. 2d 917, 937, 88 S. Ct. 1889, 1904 (1968).

The case which we find to be most analogous to the instant case is 
People v. Moore
, 286 Ill. App. 3d 649, 676 N.E.2d 700 (1997).  In 
Moore
, a police officer saw the defendant standing near a van talking to someone inside the van.  The van was parked in front of a tavern that was frequented by gang members.  Many narcotics activities and shootings had occurred there.  The officer observed what appeared to be an exchange of money, but due to distance and lack of light, he could not determine if the exchange was part of an illegal transaction.  As the officer approached the van, the defendant began to walk away.  When the officer announced that he was a policeman, the defendant walked faster, than ran.  The defendant was captured and a pat down search revealed a bag of cocaine.

The trial court granted defendant's motion to suppress, noting that the exchange could have been payment of a debt, a drug buy or a handshake.  This court affirmed, finding that there were not enough articulable facts to warrant a 
Terry
 stop.

In 
Moore
, as in the instant case, police witnessed what 
could
 have been evidence of criminal activity.  This possibility was strengthened by the existence of prior drug activity in the area.  Nevertheless, in both 
Moore
 and in this case, the observed conduct was ambiguous.  Officer O'Dekirk acknowledged that he did not know what defendant had placed in his mouth.  However, because of defendant Rainey's actions in attempting to appear to yawn, and given O'Dekirk's familiarity with where drugs are commonly hidden, we believe that the instant case is not controlled by 
Moore
.

On balance, we believe that defendant Rainey's actions provide a stronger justification for governmental intrusion than did those of the defendants in 
Wardlow
 and 
Moore
.  The issue in those cases, however, was not the existence of probable cause to arrest, but whether the circumstances created a reasonable suspicion of criminal conduct sufficient to justify a 
Terry
 stop.  The 
Terry
 reasonable suspicion standard is less stringent than the probable cause standard needed for arrest.  See 
People v. Green
, 153 Ill. App. 3d 888, 506 N.E.2d 367 (1987).

We do not believe
 that the totality of the circumstances was sufficient to establish probable cause to arrest.  Defendant was not engaged in any criminal activity as he stood talking in the gas station parking lot.  No one had complained about the defendant's presence or that of the group.  Defendant's conduct in turning away from the police car, even if characterized as "flight," was not sufficient to justify even a 
Terry
 stop.  
Wardlow
, 183 Ill. 2d 306, 701 N.E.2d 484.  It was not until defendant "furtively" put something in his mouth that an investigatory stop may have been warranted.  But such equivocal conduct cannot, if the probable cause requirement of the fourth amendment is to have meaning, justify a warrantless arrest.

We recognize that the public interest in preventing crime and apprehending criminals is a weighty concern.  It seemingly weighs even more heavily in cases where a police officer's hunch has proven to be correct.  But that great weight cannot be allowed to crush the liberties protected by the Constitution.  "The police officer is not entitled to seize and search every person whom he sees on the street ***.  Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so."  
Sibron
, 392 U.S. at 64, 20 L. Ed. 2d at 935, 88 S. Ct. at 1903.

For the reasons stated above, the judgment of the circuit court is reversed.

Reversed.

HOMER and LYTTON, J.J., concur.