THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. XAVIER HOLLIDAY, Defendant-Appellant.

Third District   Nos. 3—98—1001, 3—98—1002 cons.

Opinion filed January 4, 2001.

Jennifer Aiton, of State Appellate Defender's Office, of Ottawa, for appellant.

Marshall E. Douglas, State's Attorney, of Rock Island (John X. Breslin and Richard T. Leonard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE HOMER delivered the opinion of the court:
While on probation for a prior drug conviction, the defendant, Xavier Holliday, was charged with resisting a peace officer and unlawful possession of a controlled substance with intent to deliver in a drug-free zone. 720 ILCS 5/31—1, 570/401(c)(2), 407(b)(1) (West 1998). As a result of these charges, the State also filed a petition to revoke the defendant's probation. The defendant moved to suppress certain evidence at his trial and his probation revocation hearing. The court conducted a suppression hearing and denied the motion. Subsequently, in a consolidated jury trial and revocation hearing, the defendant was convicted of the charges and his probation was revoked. He now claims, *inter alia*, that his motion to suppress should have been granted because he was subjected to an illegal search. Since we agree, we reverse his convictions and his probation revocation.

## BACKGROUND

### Officer Landi's Testimony

At the suppression hearing, Officer Landi testified that he was driving a marked squad car on patrol with Officer Collins when they encountered the defendant. As they passed an alley, which took one or two seconds, Collins told Landi to stop because he had seen a drug transaction. Landi stopped the car and pulled into the alley, where he saw the defendant standing, with a bicycle, near Deborah Martin. He did not observe a drug transaction, but he recognized the defendant on sight. The defendant rode his bicycle toward the officers, and Collins began questioning him about what he was doing in the alley. The defendant said he was talking to his aunt. The defendant consented when Collins requested permission to search him. Landi then asked the defendant to get off his bicycle and place his hands on the squad car.

Although Martin was standing near the defendant, Collins and Landi did not detain her or request permission to search her. Landi testified that he was concerned with the defendant at the time. Landi said he was looking for crack cocaine or other drugs like marijuana. While searching the defendant, Landi performed a "crotch check" and felt an object he believed was a bag of crack cocaine. He said he recognized the object from his experience with drug dealers who had concealed cocaine "underneath the scrotum or around the genital area." Landi acknowledged that such concealment would require the drugs to be taped or otherwise attached to the subject's body. He said that the defendant's pants were loose and that he did not determine whether the defendant was wearing underwear.

During the search, Landi attempted to handcuff the defendant while announcing, "he has a bag of crack in his crotch." He testified that the defendant broke away and ran at that point. The officers chased the defendant into his house. Landi went upstairs but did not find the defendant.

### Officer Collins' Testimony

Officer Collins testified that he was riding in the passenger seat of the squad car when he saw the defendant and Martin standing 50 to 60 feet away in the alley. He said he first believed the defendant was urinating because his pants were undone. However, he said he then saw the defendant "take his right hand and hand Martin an item, and then [take] an item from her and put it in his right pocket." He did not see what they exchanged, but he told Landi to stop the car because he had witnessed a drug deal. Collins acknowledged that only a few seconds passed between the time he saw the defendant and when Landi stopped the car.

According to Collins, the defendant was riding his bicycle southbound and Martin was walking southbound when Landi pulled into the alley. Collins asked him what he was doing, and he said he was talking to his aunt. Martin advised that the defendant was her son's friend. Collins did not ask her if she had participated in a drug transaction or request permission to search her. He testified that the defendant consented to a pat-down search for "drugs or weapons." Landi conducted a search and advised that the defendant had "rock cocaine in his pants." The defendant ran away as Landi attempted to handcuff him, and the officers chased him to his house.

When they entered the house, Landi went upstairs and Collins went downstairs. Collins testified that he entered the basement hallway and saw the defendant exiting a bathroom. The defendant put his hands in the air and said, "I've got nothing on me." Collins handcuffed him and searched the bathroom, finding a small bag of cocaine on a ledge at the top of the shower. At the time of the arrest, Collins knew the defendant was serving a sentence of probation.

## The Defendant's Testimony

The defendant testified that while en route to get his hair cut, he stopped to talk with Deborah Martin, his friend's mother. He said he was riding his bicycle and was wearing jeans, socks, and shoes, but no shirt. After conversing with Martin, the defendant was stopped by police officers Jeff Collins and Richard Landi. Collins had previously arrested the defendant for possession of marijuana, although the ensuing charges were dismissed. He also recognized Landi. The officers had him place his hands on their squad car and performed a pat-down search. The defendant stated that he did not consent to the search. Collins recovered $10 from the defendant's pocket, and Landi grabbed his crotch. The defendant ran to his house after Landi announced that the defendant had something.

Upon entering the house, the defendant went into the basement and tried to locate his mother. He was sitting on his brother's bed when Collins entered the basement. He stood up and walked into the hallway, where Collins threw him against a wall and handcuffed him. Collins then entered a nearby bathroom.

## Martin's Testimony

Deborah Martin testified at the hearing, as well, and said that she was talking to the defendant in the alley before the officers approached him. She asked what was going on, but the officers did not respond. They did not ask her if she had participated in a drug transaction or request permission to search her. She denied that she had purchased cocaine from the defendant.

The judge denied the defendant's motion to suppress, concluding that the officers' conduct in the alley was justified by either probable cause or consent. He also concluded that the officers had exigent circumstances to enter the defendant's house and conduct a warrantless search. The case then proceeded to a consolidated jury trial and probation revocation hearing.

Officer Collins' testimony at trial was substantially similar to his testimony at the suppression hearing. Additionally, however, he explained that he and Landi did not question Martin in the alley because "[they] were dealing with Mr. Holliday, he was the one holding the drugs, [they] focused [their] attention on him." Collins also testified that defendant placed the object he received from Martin in his right hand, rather than his right pocket.

Officer Landi testified that when he performed the "crotch check," he immediately felt a foreign object that he recognized as a package of crack cocaine. His conclusion was based on the location of the object and the information Collins had given him. He acknowledged having no indication that the defendant possessed a weapon at the time of the search. He also said the defendant was not under arrest before he felt the object.

At the close of the evidence, the judge revoked the defendant's probation in case number 97—CF—1026. The jury found the defendant guilty of the charges in case number 98—CF—706. The defendant was sentenced in case number 98—CF—706 to nine years' imprisonment for the unlawful possession of a controlled substance with intent to deliver in a drug-free zone and 364 days for resisting a peace officer. He was sentenced to seven years for unlawful delivery of a controlled substance and three years for unlawful possession of a controlled substance in case number 97—CF—1026. The sentences were ordered to be served concurrently. Subsequently, the defendant filed this appeal claiming, *inter alia*, that his motion to suppress should have been granted because he was subjected to an illegal search.

## STANDARD OF REVIEW

A reviewing court will not reverse a trial court's factual findings unless they are found to be manifestly erroneous. *People v. Perez*, 288 Ill. App. 3d 1037, 1043, 681 N.E.2d 173, 177 (1997). However, the trial court's ultimate determination regarding the reasonableness of a warrantless search is subject to *de novo* review. *Perez*, 288 Ill. App. 3d at 1043, 681 N.E.2d at 177.

## ANALYSIS

### I. Case Number 98—CF—706

A police officer may stop a person in a public place for

temporary questioning if he reasonably infers from the circumstances that the person is involved in criminal activity. 725 ILCS 5/107—14 (West 1998); *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). During this so-called *Terry* stop, the officer may search the person if he "reasonably suspects that he or another is in danger of attack." 725 ILCS 5/108—1.01 (West 1998). However, the scope of the search must be strictly limited to discovering weapons. *People v. Blake*, 268 Ill. App. 3d 737, 739, 645 N.E.2d 580, 582 (1995). If the officer wishes to search for other evidence of criminal activity, such as drugs, he must have probable cause to do so. *Blake*, 268 Ill. App. 3d at 741, 645 N.E.2d at 583. Probable cause exists when the facts and circumstances within the officer's knowledge are sufficient to warrant a reasonable person in believing that a crime has been committed and that evidence of the crime is in the place to be searched. *People v. Adams*, 169 Ill. App. 3d 284, 287, 523 N.E.2d 1103, 1105 (1988). When the question is whether a crime has been committed, rather than whether a suspect committed a known crime, more evidence is required to establish probable cause. *In re D.G.*, 144 Ill. 2d 404, 410, 581 N.E.2d 648, 650 (1991).

Officer Landi testified that he had no indication that the defendant possessed a weapon at the time of his search. He also testified that he was looking for drugs during the search. Thus, even assuming *arguendo* that the defendant was subjected to a valid *Terry* stop, Landi still needed probable cause to justify the search he performed. We conclude that probable cause did not exist.

■ The basis for the search was Officer Collins' belief that he had observed a drug transaction between the defendant and Deborah Martin. That belief was based upon his observation that the defendant and Martin had exchanged items and that the defendant's pants were undone. However, Collins admitted that he could not see what items the defendant and Martin purportedly exchanged. Additionally, his observation occurred from a moving vehicle 50 to 60 feet away from the defendant and Martin and lasted only one to two seconds. Although Collins' observations arguably supported the officers' reasonable suspicion that a drug transaction had taken place, thereby justifying a *Terry* stop and a protective weapons search, those observations were insufficient to establish probable cause for a search of the defendant's crotch for drugs.

In *People v. Rainey*, 302 Ill. App. 3d 1011, 706 N.E.2d 1062 (1999), a marked squad car entered a gas station parking lot where Rainey and a few others were loitering. An officer in an unmarked car observed Rainey step away from the group, turn his back to the marked car, and place "items" inside his mouth while appearing to

stretch or yawn. The officer did not see the items, but he knew that hiding drugs in one's mouth was a common practice. He and his partner consequently approached Rainey and searched his mouth, finding three small packages of cocaine. This court noted that a *Terry* stop may have been warranted when Rainey "furtively" put something in his mouth. However, the court then stated: "But such equivocal conduct cannot, if the probable cause requirement of the fourth amendment is to have meaning, justify a warrantless arrest." *Rainey*, 302 Ill. App. 3d at 1015, 706 N.E.2d at 1065.

The fact that the defendant's pants were undone adds no more to the probable cause analysis in the instant case than the furtive conduct of the defendant in *Rainey*. The State cites *People v. Morales*, 221 Ill. App. 3d 13, 581 N.E.2d 730 (1991), in support of its argument; however, the facts in *Morales* distinguish that case from the case at bar. In *Morales*, an officer made a *Terry* stop under circumstances not unlike those present in the instant case. The officer frisked the defendant upon observing a large bulge in the defendant's jean jacket pocket which the officer thought was a weapon. When the officer squeezed the bulge, it made a crackling sound and felt like a bag of cannabis. After asking the defendant what was in the bag and receiving no response, the officer reached in and retrieved a bag of cannabis. In that case the court appropriately held that the officer obtained probable cause while conducting a protective search for weapons. *Morales*, 221 Ill. App. 3d at 18-19, 581 N.E.2d at 734-35. In the instant case, Officer Landi lacked probable cause to search the defendant's crotch for drugs because he initiated that search at a point where the fourth amendment only permits protective searches.

Alternatively, the State contends that Landi's search was justified by the defendant's consent. The defendant, however, contends that Landi's "crotch check" exceeded the scope of his consent.

It is well settled that a search conducted pursuant to voluntary consent is not subject to the fourth amendment's warrant and probable cause requirements. *People v. Sanchez*, 292 Ill. App. 3d 763, 769, 686 N.E.2d 367, 371 (1997). However, when an officer relies on consent to conduct a warrantless search, he has no more authority than the defendant apparently gave through the consent. *People v. Baltazar*, 295 Ill. App. 3d 146, 149, 691 N.E.2d 1186, 1189 (1998). The scope of such consent is determined by considering what a reasonable person would have understood from the exchange between the defendant and the officer. *Baltazar*, 295 Ill. App. 3d at 149-50, 691 N.E.2d at 1189.

In our society, individuals possess a heightened privacy interest in their bodies. *Winston v. Lee*, 470 U.S. 753, 84 L. Ed. 2d 662, 105 S. Ct. 1611 (1985). This interest is reflected in the criminalization of inap-

propriate touching of a person's sex organs. See, *e.g.*, 720 ILCS 5/12—15(a)(1), (a)(2), 12—12(e) (West 1998). At least one court observed that " 'the final bastion of privacy is to be found in the area of human procreation and excretion,' " and that " '[if] a person is entitled to any shred of privacy, then it is to privacy as to these matters.' " *Sterling v. Cupp*, 290 Or. 611, 624, 625 P.2d 123, 132 (1981), quoting *Sterling v. Cupp*, 44 Or. App. 755, 761, 607 P.2d 206, 208 (1980); see also *United States v. Blake*, 888 F.2d 795, 800 n.11 (11th Cir. 1989) (holding that a frontal touching of the defendant's crotch in an airport terminal exceeded the scope of his general consent to search him for drugs).

In light of these principles, we conclude that Landi's "crotch check" exceeded the scope of the defendant's consent to search him. The consent arose from Collins' general request to search for drugs or weapons. There is no evidence that the request singled out any particular area of the defendant's body, and we are convinced that a reasonable person would have expected no more than a general frisk or patdown of the outer clothing from this exchange. We are equally convinced that such a person, having given such consent, would be surprised to find an officer's hand grabbing his crotch and probing his genital area.

The State cites *Florida v. Jimeno*, 500 U.S. 248, 114 L. Ed. 2d 297, 111 S. Ct. 1801 (1991), and other cases, for the proposition that a defendant's unqualified consent to search encompasses containers within the item to be searched. Such cases are inapposite, as the defendant's crotch can hardly be equated with an inanimate container. See, *e.g.*, *Lee*, 470 U.S. at 758-60, 84 L. Ed. 2d at 667-69, 105 S. Ct. at 1615-16 (noting a difference between privacy interests in the human body and privacy interests in houses, papers, and effects). Landi's search was unreasonable and thus prohibited by the fourth amendment. An officer must be more particular in explaining the scope of a proposed genital search before a defendant's ensuing consent will justify it.

Accordingly, the defendant's motion to suppress should have been granted in case number 98—CF—706. This conclusion encompasses the drugs found in the defendant's bathroom because they were the fruit of the poisonous tree.[1] Since the defendant could not have been convicted without the evidence stemming from Landi's illegal search, we reverse his convictions outright. See *People v. Morgan*, 138 Ill. App. 3d 99, 484 N.E.2d 1292 (1985).

---

[1]The State has not argued that the defendant's conviction for resisting a peace officer should survive suppression of the physical evidence.

## II. Case Number 97—CF—1026

■ The defendant also claims that we should reverse the order revoking his probation in case number 97—CF—1026 because the evidence should have been suppressed at his probation revocation hearing as well as his trial. We note that the exclusionary rule generally does not apply at probation revocation hearings. *People v. Dowery*, 62 Ill. 2d 200, 207, 340 N.E.2d 529, 533 (1975). However, an exception to this general principle has been acknowledged:

> " '[W]hen the police at the moment of search know that a suspect is a probationer, they may have a significant incentive to carry out an illegal search even though knowing that evidence would be inadmissible in any criminal proceeding. The police have nothing to risk: If the motion to suppress in the criminal proceedings were denied, defendant would stand convicted of a new crime; and if the motion were granted, the defendant would still find himself behind bars due to revocation of probation. Thus, in such circumstances, extension of the exclusionary rule to the probation revocation proceeding may be necessary to effectuate Fourth Amendment safeguards.' " *People v. Knight*, 75 Ill. 2d 291, 298, 388 N.E.2d 414, 418 (1979), quoting *United States v. Winsett*, 518 F.2d 51, 54 n.5 (9th Cir. 1975).

To invoke this exception, a probationer who has moved for suppression of evidence must allege that he was subjected to an illegal search and that the search resulted from police harassment. *People v. Grubb*, 143 Ill. App. 3d 822, 826, 493 N.E.2d 699, 702 (1986). A showing of police harassment requires more than mere evidence that the officer knew the suspect was on probation at the time of their encounter. *People v. Stewart*, 242 Ill. App. 3d 599, 612, 610 N.E.2d 197, 206 (1993). There must also be evidence of a nexus between that knowledge and the officer's action toward the suspect. *Stewart*, 242 Ill. App. 3d at 612, 610 N.E.2d at 206.

■ During the suppression hearing, the defendant orally amended his motion to include an allegation that the officers targeted him because they knew he was a probationer. The record supports this allegation. The defendant testified that Collins had arrested him for possession of marijuana before their encounter in the alley. Landi testified that he did not see a drug transaction when he pulled into the alley, but he knew the defendant on sight. Both officers were apparently familiar with the defendant. Additionally, in its oral argument before this court, the State conceded that the officers knew the defendant was on probation when they encountered him.

In light of these facts, the officers' complete inaction toward Deborah Martin signals police harassment of the defendant. The officers

said they entered the alley because they believed the defendant had made a drug transaction with Martin. Nevertheless, they did not question Martin about the suspected transaction or ask for permission to search her. She was not detained in any way. The officers focused their attention solely on the defendant even though, under their asserted reason for initiating the encounter, Martin was also guilty of a drug offense and would presumably have had illegal drugs in her possession.

Accordingly, we conclude that the defendant has made a sufficient showing to warrant application of the exclusionary rule at his probation revocation hearing. We consequently reverse the revocation outright because the State could not have obtained it without the evidence from Landi's illegal search.

## CONCLUSION

For the foregoing reasons, the defendant's convictions in case number 98—CF—706 and his probation revocation in case number 97—CF—1026 are reversed.

Judgments reversed.

SLATER and HOLDRIDGE, JJ., concur.