2022 IL App (1st) 191112-U

No. 1-19-1112

Order filed May 4, 2022

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 18 CR 7384 |
| | ) | |
| KENNARD DANIELS, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge presiding. |

JUSTICE BURKE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We reverse defendant's convictions for unlawful use of a weapon by a felon, possession of a controlled substance and possession of cannabis and vacate his sentences where the police lacked probable cause to arrest him and thus, his pretrial motion to quash arrest and suppress evidence should have been granted.

¶ 2    Following a stipulated bench trial, the trial court found defendant Kennard Daniels guilty of unlawful use of a weapon by a felon, possession of a controlled substance and possession of cannabis. The court sentenced him to five years' imprisonment, three years' imprisonment and

180 days in jail, respectively, all to be served concurrently. On appeal, defendant contends that the police lacked probable cause to arrest him and thus, the court erred in denying his pretrial motion to quash arrest and suppress evidence. We agree that the police lacked probable cause to arrest defendant and that his motion to suppress should have been granted. Because the State would be unable to convict him at a new trial upon remand without the suppressed evidence, we must reverse his convictions outright and vacate his sentences.

¶ 3                                    I. BACKGROUND

¶ 4       The Chicago police arrested defendant for soliciting unlawful business, a Chicago Municipal Code violation. Chicago Municipal Code § 10-8-515(a) (added Apr. 1, 1998). Following his arrest, defendant was charged with unlawful use of a weapon by a felon, possession of a controlled substance, possession of cannabis with intent to deliver and soliciting unlawful business. Later, his charges were superseded by a grand jury indictment. The grand jury charged defendant with armed violence, several counts of unlawful use of a weapon by a felon and aggravated unlawful use of a weapon, a violation of the Firearm Owners Identification Card Act (430 ILCS 65/0.01 *et seq.* (West 2018)), and multiple drug-related offenses. In relevant part for this appeal, Count IX alleged that defendant committed the offense of delivery of a controlled substance, and Count XII alleged that defendant committed the offense of possession of cannabis with intent to deliver. Prior to trial, defendant filed a motion to quash his arrest and suppress the evidence therefrom, contending that the police arrested him without probable cause to believe that he had committed an offense.

¶ 5       At the hearing on defendant's motion, Chicago Police Detective Matthew Scanlan testified that, at around 8 p.m. on April 27, 2018, he began conducting surveillance on an intersection in Chicago where a sandwich shop was located by watching the feed from a pod camera. The footage

from the pod camera was published for the trial court and admitted into evidence. According to the video, at around 8:30 p.m., defendant exited the sandwich shop along with a woman named Karen McFall. Defendant held a plastic bag, the size of one from a grocery store. Both he and McFall briefly paced around the entrance of the sandwich shop while looking up and down the street. There were several people walking on the sidewalk. Soon thereafter, defendant and McFall appeared to stop an unknown man, who had been walking on the sidewalk. Defendant looked as if he engaged the man in a brief conversation and then used his cell phone to point toward McFall, who was standing right next to him. At the hearing, Detective Scanlan testified that the feed from the pod camera did not include audio, so he could not hear any conversation, if there was one, between defendant and the unknown man.

¶ 6    Back in the video, defendant put the cell phone toward his ear and walked around McFall. The unknown man seemed to reach into his right pants pocket and subsequently engaged in a hand-to-hand transaction with McFall. Neither what the man possibly gave McFall nor what McFall gave the man was ascertainable from the video. At the hearing, Detective Scanlan testified that the object McFall gave the unknown man was "the size of a dime," though he could not identify the object. Thereafter, the man walked away while McFall put something into her long cardigan-like sweater. Lastly, defendant entered the sandwich shop with McFall trailing him. The entire video lasted 40 seconds.

¶ 7    After witnessing what Detective Scanlan believed to be McFall's hand-to-hand transaction with the unknown man, Detective Scanlan ceased conducting surveillance and informed Chicago Police Officer Joseph Rizzi about his observation. Those two along with another officer converged on the intersection near the sandwich shop, where Detective Scanlan and Officer Rizzi observed defendant standing inside of the shop. Officer Rizzi approached defendant, and although Officer

Rizzi did not have an arrest warrant or search warrant, he arrested defendant for soliciting unlawful business. After taking defendant into custody, Officer Rizzi searched defendant and his belongings. In a plastic bag recovered from defendant, Officer Rizzi found a box of live 9 millimeter rounds. Additionally, Officer Rizzi discovered a handgun located in defendant's waistband. In defendant's pants pocket, Officer Rizzi recovered 14 bags of suspected cannabis and 2 bags of suspected heroin. While Officer Rizzi initially testified that his search of defendant was performed pursuant to officer safety, he later testified that the search was not performed for officer safety reasons, but rather as incident to defendant's arrest for soliciting unlawful business.

¶ 8    Detective Scanlan further testified that he conducted surveillance that night for approximately an hour and during that time, he did not observe defendant and McFall separate. However, he conceded that, at times, defendant and McFall were not in the surveillance video at the same time. Additionally, Detective Scanlan acknowledged that he only observed one hand-to-hand transaction and that neither he nor his partners detained the unknown man who had been given an object by McCall. Lastly, Detective Scanlan stated that he did not observe defendant flagging down vehicles or pedestrians, did not observe him yelling any drug slang to anyone, and did not observe any evidence of defendant possessing a weapon before he was arrested.

¶ 9    After the evidence was presented at the hearing, defendant argued that his conduct of pointing his cell phone toward McCall was ambiguous and did not rise to the level of probable cause to arrest him for soliciting unlawful business. Defendant therefore posited that the evidence recovered from him should be suppressed. After argument, the trial court found that the officers testified credibly and noted that the surveillance video "speaks for itself." It asserted that the officers might have actually "understated" what they observed because, to the court, it looked like a "probable drug transaction taking place." As a result, the court did not find any fourth amendment

violation when the officers briefly "detain[ed]" defendant and "search[ed] him on the scene." The court therefore denied his motion to quash arrest and suppress evidence.

¶ 10 Thereafter, defendant filed a motion to reconsider, arguing that Officer Rizzi did not briefly detain him but rather arrested him without a warrant or probable cause. The court observed that it had watched the surveillance footage and heard the officers' testimony. The court asserted that, "[w]hether [the officers] had probable cause to believe drug dealing was taking place, they thought he was soliciting." According to the court, based on the video, it "saw what looked like a drug transaction." And in light of the officers' testimony, their "concern," their "very brief detention" of defendant, the "contraband found on him" and the fact that the officers did not "tak[e] him to another location," the court still found no fourth amendment violation. Consequently, the court denied defendant's motion to reconsider.

¶ 11 Following the denial of his motion to reconsider, defendant proceeded by way of a stipulated bench trial, which included adopting the evidence from his suppression hearing. Additionally, the parties stipulated to the chain of custody of the evidence recovered from defendant after his arrest and to crime lab analysis determining that one item recovered from him tested positive for 0.2 grams of heroin and another item tested positive for 10.3 grams of cannabis. Lastly, the parties stipulated that defendant had previously been convicted of armed robbery.

¶ 12 Ultimately, the trial court found defendant not guilty of armed violence, but guilty of all the other weapons-related offenses, which merged into a single conviction for unlawful use of a weapon by a felon (Count II). Additionally, on Count IX, which had charged defendant with delivery of a controlled substance, the court found him guilty of the lesser-included offense of possession of a controlled substance. Lastly, on Count XII, which had charged defendant with

possession of cannabis with intent to deliver, the court found him guilty of the lesser-included offense of possession of cannabis, a misdemeanor.

¶ 13    Defendant filed a motion for new trial, contending that the trial court erred in its ruling on his motion to suppress, but the court denied the motion. The case proceeded to sentencing, where the court sentenced defendant to five years' imprisonment for unlawful use of a weapon by a felon, three years' imprisonment for possession of a controlled substance and 180 days in jail for possession of cannabis, all to be served concurrently. Defendant unsuccessfully filed a motion to reconsider his sentence. This appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15                              A. Motion to Suppress

¶ 16    Defendant contends that the trial court erred in denying his motion to quash arrest and suppress evidence where the police lacked probable cause to arrest him. Specifically, defendant argues that his equivocal, entirely innocuous action of pointing his cell phone at McFall did not justify the police arresting him, especially because the police never determined what McFall gave the unknown man.

¶ 17    "An arrest executed without a warrant is valid only if supported by probable cause." *People v. Grant*, 2013 IL 112734, ¶ 11. Probable cause to arrest exists when the facts known to the officer at the time of the arrest would lead a reasonable person to believe the arrestee had committed a crime. *Id.* "The existence of probable cause depends upon the totality of the circumstances at the time of arrest," including the officer's factual knowledge coupled with his or her law enforcement experience. *Id.* Whether probable cause exists is determined by common sense considerations, and the standard is the probability of criminal activity, not proof beyond a reasonable doubt. *Id.*

¶ 18    In this case, Officer Rizzi arrested defendant for violating a Chicago municipal ordinance that prohibited soliciting unlawful business. "[P]robable cause for arrest may be based on a violation of a municipal ordinance." *Id.* ¶ 10. Under section 10-8-515 of the Chicago Municipal Code, which is titled "Soliciting unlawful business," no one "may: (i) stand upon, use or occupy the public way to solicit any unlawful business; or (ii) interfere with or impede any pedestrian or anyone in a vehicle on the public way, for the purpose of soliciting any unlawful business." Chicago Municipal Code § 10-8-515(a) (added Apr. 1, 1998). The Chicago Municipal Code defines "unlawful business" as "any exchange of goods or services for money or anything of value, where the nature of the goods or services, or the exchange thereof, is unlawful," including "the illegal sale of narcotics." *Id.* § 10-8-515(b). Further, soliciting may be accomplished by "words, gestures, symbols or any similar means." *Id.* Although defendant was eventually charged and convicted with multiple drug-related offenses, all that is required in the probable cause context "are facts sufficient to lead a reasonably cautious person to believe that the arrestee solicited unlawful business in violation of section 10-8-515" of the Chicago Municipal Code. *Grant*, 2013 IL 112734, ¶ 22. As such, "the traditional indicia of drug possession or sales" is not required. *Id.*

¶ 19    In a motion to quash arrest and suppress evidence, the defendant has the initial burden of proof. *People v. Little*, 2021 IL App (1st) 181984, ¶ 60. If the defendant makes a *prima facie* showing of an unconstitutional arrest, the burden then shifts to the State to show his warrantless arrest was based on probable cause. *Id.* The ultimate burden of proof, however, remains with the defendant. *Id.* During a suppression hearing, the trial court is responsible for determining the credibility of the witnesses, weighing the evidence, and drawing reasonable inferences therefrom. *People v. Williams*, 2016 IL App (1st) 132615, ¶ 32. As such, we apply a two-part standard of review when examining the court's ruling on a motion to suppress. *People v. Almond*, 2015 IL

113817, ¶ 55. We afford great deference to the court's findings of fact and will reverse them only if they are against the manifest weight of the evidence. *Id.* But we review the ultimate legal ruling as to whether the evidence should be suppressed *de novo. Id.* To this end, in the instant case, the chief factual finding that the trial court made was that the officers testified credibly, a finding that defendant does not contest. Moreover, the court noted that the critical evidence, the surveillance footage, spoke "for itself." As such, there is no actual dispute over the court's factual findings, meaning for all intents and purposes, our review of the court's ruling on defendant's motion to suppress is *de novo*.

¶ 20 In reviewing the trial court's ruling in this case, we must discuss our supreme court's decision in *Grant*, 2013 IL 112734, as it involved the very same municipal ordinance at issue in this case. There, a police officer sitting in an unmarked police vehicle observed the defendant standing in front of the entrance to a housing complex in an area known for copious amounts of drug sales. *Id.* ¶ 4. The officer observed the defendant yell " 'dro dro' " to a passing vehicle, slang which the officer knew based on his experience to mean that the defendant was selling cannabis. *Id.* After making this observation, the officer and his partners arrested the defendant for solicitation of unlawful business. *Id.* ¶ 5. Upon searching the defendant, the officers recovered suspected cannabis and cocaine. *Id.* The defendant was eventually charged with two drug-related offenses. *Id.* ¶ 3. Prior to trial, he filed a motion to quash his arrest and suppress the evidence therefrom, arguing that the police lacked probable cause to arrest him. *Id.* ¶¶ 4, 6. The trial court denied his motion, but the appellate court reversed. *Id.* ¶¶ 6-7.

¶ 21 The case then reached our supreme court, where it found that, when the officer observed the defendant offer cannabis for sale to a passing vehicle using drug slang, the officer witnessed the defendant "commit[] the offense of solicitation of unlawful business in violation" of the

Chicago Municipal Code. *Id.* ¶ 15. Consequently, the court concluded that the officer had probable cause to arrest the defendant. *Id.* The court also went on to note that the defendant's presence in an area known for frequent drug sales was another factor contributing to the existence of probable cause. *Id.* ¶ 18. The court accordingly reversed the appellate court and affirmed the judgment of the trial court. *Id.* ¶ 25. Additionally, in *People v. Neal*, 2011 IL App (1st) 092814, ¶¶ 12-13, 16, which predated *Grant*, this court held similarly that an experienced police officer's observation of an individual in a public place "yelling 'blows,' " a slang term referring to the sale of heroin, to passersby was probable cause to arrest that individual for soliciting unlawful business in violation of the Chicago ordinance. *Grant* and *Neal* are the only two published decisions involving probable cause and the offense of soliciting unlawful business.

¶ 22    The facts in *Grant* and *Neal* are notably different than the facts of the instant case. Because the officers in *Grant* and *Neal* understood the defendants' comments to be offering to sell drugs to passersby, it was indisputable that the officers had probable cause to believe they had committed the offense of solicitation of unlawful business because they actually observed the defendants committing that offense. In this case, in contrast to *Grant* and *Neal*, all defendant did was possibly engage an unknown man in a conversation—an uncertain fact given Detective Scanlan's admission that he had no audio capabilities while conducting surveillance using a pod camera—and then point his cell phone toward McFall. She then engaged the man in a single hand-to-hand transaction, where she gave him a small, dime-sized unknown object. Given that Detective Scanlan could not hear the possible conversation between defendant and the unknown man, it is entirely possible that defendant had an innocent explanation for gesturing toward McFall. "Although furtive movements may be considered justification for performing a warrantless search when coupled with other circumstances tending to show probable cause [citations], looks, gestures, and movements taken

alone are insufficient to constitute probable cause to search since they may be innocent [citation]." *People v. Creagh*, 214 Ill. App. 3d 744, 747-48 (1991). Defendant's actions by themselves were insufficient to lead a reasonably cautious person to believe that he had solicited unlawful business.

¶ 23 Though defendant's actions alone were insufficient to support probable cause, we cannot view his actions in isolation. Based on the surveillance video, which showed defendant and McFall exiting the sandwich shop together, pacing around outside together and then eventually proceeding into the sandwich shop together, they were almost assuredly associated with one another. But still, McFall's lone hand-to-hand transaction of an unknown object would not support probable cause to believe she committed any drug-related offense, as the State posits, because this court has previously noted that "[a] single transaction of unidentified objects does not support probable cause to believe that a drug transaction has occurred." *People v. Trisby*, 2013 IL App (1st) 112552, ¶ 15 (citing *People v. Oliver*, 368 Ill. App. 3d 690, 697-98 (2006); *People v. Holliday*, 318 Ill. App. 3d 106, 111 (2001); *People v. Moore*, 286 Ill. App. 3d 649, 653 (1997)). Even viewing defendant and McFall's actions together, they were insufficient to support probable cause that he solicited unlawful business.

¶ 24 As noted, "the traditional indicia of drug possession or sales" was not required for the police to possess probable cause that defendant solicited unlawful business in violation of the Chicago municipal ordinance. *Grant*, 2013 IL 112734, ¶ 22. Still, though, facts beyond what they observed defendant and McFall doing were necessary to support probable cause in this case because the police did not observe him actually committing the offense, such as by yelling drug slang to passersby. See *id.* ¶¶ 15, 21-22 (the police were not required to have the traditional indicia of drug possession or sales where officers observed the defendant offering drugs for sale by shouting " 'dro, dro,' " thus "witness[ing] him commit[] the offense of solicitation of unlawful

business"). For instance, there was no testimony that defendant stood in an area known for frequent drug sales. See *id.* ¶ 18 (the defendant's "presence in a known high-crime area" is "one factor contributing to [a] probable cause" analysis). There was no evidence that the police had an independent basis, such as an informant's tip, to believe defendant was soliciting unlawful business. See *People v. Marcella*, 2013 IL App (2d) 120585, ¶ 29 (noting that another factor in a probable cause analysis is whether the police had an "independent basis, such as an informant's tip or a pattern of drug smuggling \*\*\*, to believe that a crime had been committed"). There was no evidence that, when the officers approached defendant, he did anything out of the ordinary with his hands, pants or pockets. See *Creagh*, 214 Ill. App. 3d at 747 (observing that "furtive movements may be considered justification for performing a warrantless search when coupled with other circumstances tending to show probable cause"). There was also no evidence that defendant attempted to flee upon seeing the police approach. See *People v. Jones*, 196 Ill. App. 3d 937, 956, (1990) ("It is well established that a defendant's flight from police can be considered as an additional factor in determining probable cause.").

¶ 25    All defendant did was hang around a sandwich shop for around an hour and then direct an unknown man toward McFall with his cell phone. As noted, the soliciting component of soliciting unlawful business may be accomplished through gestures (see Chicago Municipal Code § 10-8-515(b) (added Apr. 1, 1998)) and defendant's actions could be consistent with him soliciting unlawful business. But, given the evidence of only one hand-to-hand transaction, defendant's actions at the time equally could have had an innocuous purpose. While repetition of an isolated act that may appear innocuous is unnecessary to support probable cause "where the police possess more specific information that a crime is being committed" (*Grant*, 2013 IL 112734, ¶ 17), defendant's isolated act was not buttressed by any specific information known by the police that

he was soliciting unlawful business, especially because no one knew what McFall gave the unknown man.

¶ 26    Nevertheless, the State posits that Illinois courts have never conditioned probable cause in narcotics cases on prior visual identification of a narcotic substance. In doing so, the State cites to *People v. Rucker*, 346 Ill. App. 3d 873 (2003), *abrogated on other grounds by People v. Ayres*, 2017 IL 120071. However, in *Rucker*, although officers were not able to visually identify any drugs, they did observe the defendant engage in four different transactions in which he "accept[ed] money from four different individuals in exchange for something that he removed from his jacket pocket." *Id.* at 888. And thus, the sheer volume of transactions alone made "it unlikely that the transactions were innocent exchanges." *Id.* In the present case, however, only one exchange occurred, that exchange did not involve defendant and the police did not observe money exchange hands. Therefore, the circumstances in *Rucker* are not present in this case.

¶ 27    In sum, based on the circumstances in this case, the police lacked probable cause to believe defendant solicited unlawful business in violation of the Chicago Municipal Code. Although it is possible that defendant's conduct would have supported a brief detention pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), the police did not stop defendant pursuant to *Terry*. Rather, the police arrested defendant immediately upon approaching him. As such, we need not discuss whether the facts supported such a *Terry* stop. Because defendant was arrested without a warrant and without probable cause, all of the evidence recovered from him, including the firearm, the ammunition and the various drugs, must be suppressed as the fruit of an unlawful arrest. See *People v. Horton*, 2019 IL App (1st) 142019-B, ¶ 85. And without the suppressed evidence, the State would be unable to convict defendant at a new trial upon remand, requiring us to reverse his convictions outright and vacate his sentences. See *People v. Freeman*, 2021 IL App (1st) 200053, ¶ 12. Having reversed

defendant's convictions on this basis, we need not address the remaining contention of error in his brief.

¶ 28                    III. CONCLUSION

¶ 29    For the foregoing reasons, we reverse defendant's convictions and vacate his sentences.

¶ 30    Reversed and vacated.