2018 IL App (3d) 170209

Opinion filed February 5, 2018

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2018

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Henry County, Illinois. |
|---|---|---|
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Appeal No. 3-17-0209 Circuit No. 15-CF-54 |
| WAN FUNG LEE, | ) ) | |
| Defendant-Appellee. | ) ) | Honorable Jeffrey W. O'Connor, Judge, Presiding. |

_____

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Henry County, Illinois. |
|---|---|---|
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Appeal No. 3-17-0210 Circuit No. 15-CF-55 |
| JACKY YAO CHUAN XIONG, | ) ) | |
| Defendant-Appellee. | ) ) | Honorable Jeffrey W. O'Connor, Judge, Presiding. |

_____

JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Justices Holdridge and McDade concurred in the judgment and opinion.

**OPINION**

¶ 1    The State appeals from the circuit court's ruling granting defendants' motions to quash

arrest and suppress evidence. The State argues that the dog sniff conducted on defendants'

vehicle was constitutionally permissible due to defendants' consent. Separately, the State argues that the circuit court admitted improper evidence at the hearing on defendants' motions. We affirm.

¶ 2                                                           FACTS

¶ 3        The State charged defendants, Wan Fung Lee and Jacky Yao Chuan Xiong, with unlawful cannabis trafficking (720 ILCS 550/5.1(a) (West 2014)), unlawful possession with intent to deliver cannabis (*id.* § 5(g)), and unlawful possession of cannabis (*id.* § 4(g)). Each defendant, in turn, filed a motion to quash arrest and suppress evidence. Those motions were heard on October 7, 2015.

¶ 4        Sergeant Clint Thulen testified that he pulled over defendants' vehicle on March 9, 2015, for failure to signal a lane change. A video recording of the traffic stop was introduced into evidence.

¶ 5        The video begins as Thulen commences the traffic stop. Thulen approaches the passenger side of the vehicle and leans into the window. Approximately 1½ minutes later, the driver of the vehicle, later identified as defendant Lee, exits the vehicle and walks to the front of Thulen's squad car. Thulen sits in the driver's seat of the squad car and soon thereafter Lee sits in the passenger seat. Thulen radios in defendants' information. At the seven minute mark of the video recording, a second officer, Sergeant Brian Strouss arrives at the scene.

¶ 6        Once Strouss has approached the squad car, Thulen says to him, "I couldn't smell it, but (unintelligible) probably full of weed." Thulen then asks Lee:

> "The duffel bags full of weed?
>
> LEE: What?
>
> THULEN: Are the duffel bags in the back full of weed?

2

(Lee shakes his head from side to side.)

THULEN: No? Are you sure about that?

(Lee shakes his head from side to side.)

THULEN: You're not sure?

LEE: (shakes head from side to side) No."

Thulen then asks Lee to close the passenger door of the squad car, telling him, "I don't want you to run." He adds, "You're not going to take off and run across the field on me, are you?" Meanwhile, Strouss can be seen speaking to Xiong, with the front passenger side door of the vehicle open.

¶ 7       When Strouss returns to Thulen's squad car, Thulen asks Lee, "Can we search that?" Lee throws his arms up in an exaggerated shrug, but his verbal response in unintelligible on the video. At the 12:30 minute mark in the video recording, Thulen returns Lee's driver's license and asks for his signature. Thulen gives Lee a copy of a written warning. Lee opens the squad car door, at which point Thulen says:

"Do you mind if I ask you some questions?

LEE: Yeah.

THULEN: It's okay?

LEE: I'm okay.

THULEN: Okay, can I ask you some—It's okay for me to ask you some questions?

LEE: Yeah.

THULEN: I'd like to look in the back of the truck, is that okay? You understand you don't have to let me?

3

(Lee nods.)"

¶ 8    Thulen asks which bag belongs to Lee. Lee tells him it is the one on the end. Thulen asks Lee to show him, and the two alight from the squad car. Thulen approaches the back of the vehicle while Lee begins to walk to the passenger side. Thulen yells, "Sir. Sir. Sir, sir sir. Hey, no talking." Thulen gestures "come here" with his index finger while yelling at Lee. Thulen continues, "Can you show me which bag is yours? Can you open it up?" Lee opens the rear passenger side door and removes what appears to be a suitcase. Thulen then asks, "Would you mind opening the back? I don't want to search it, but I would like you to open the back if you don't mind. I'd like you to look at me."

¶ 9    As Strouss presses his face into the tinted back window, Thulen asks Lee and Xiong, "You guys have got nothing to hide, right? Would you mind waiting for a dog to come and walk around the outside of the car?" Thulen tells them "it won't take too long." At the 14:45 minute mark of the video, Thulen radios in requesting a canine. He then tells defendants, "Hey, you're free to go. You can do anything you want. You know, you're free to go so I sure appreciate you waiting around for the dog though."

¶ 10    For approximately 25 minutes, defendants and the officers make small talk outside of the vehicle. In that period, Thulen requests that Xiong roll up the windows of the vehicle. When the canine arrives, Thulen states: "Oh, there's our other officer. Okay, he's going to walk the dog around the car, if that's still ok." Either Lee or Xiong responds, "Okay, and then we go?" Thulen responds, "Yeah." The video shows the canine apparently alerting.

¶ 11    Thulen testified that upon initially approaching the vehicle, he looked into the back window of the vehicle and observed five large duffel bags. He did not see or smell any cannabis. Thulen's observations led him to believe that the duffel bags in the vehicle contained cannabis,

4

but he testified that his belief did not rise to the level of a reasonable suspicion. Thulen further explained that when he asked Lee if he could search the duffel bags, Lee instead produced his personal bag, which did not contain any cannabis. Thulen learned that Xiong had denied consent to search the vehicle.

¶ 12 Thulen testified that he told defendants not to speak to each other for officer safety purposes. He explained that subjects speaking to one another in a foreign language not understood by the officer may provide an opportunity for the subjects to "get their plan together." Thulen admitted that instead of saying, "Hey, no talking," he should have instead asked defendants to "[p]lease speak English." He further explained that he requested defendants roll up the vehicle's windows because that would make the dog sniff more accurate.

¶ 13 At the conclusion of Thulen's testimony, the defense moved to admit a written, self-produced timeline of the traffic stop. The State objected, arguing that the court could watch the video of the traffic stop without any additional guidance. The court admitted the timeline and asked defense counsel to circle the most relevant portions so it could "really zone in on" those parts of the video.[1] The court clarified that the timeline was admitted only for that purpose.

¶ 14 Lee testified that he allowed Thulen to look in his personal suitcase, but denied consent to search the vehicle because it did not belong to him. Lee further testified that he was frightened when Thulen forbade him from talking to Xiong. He stated: "I don't have any chance to talk to my friend, so how I can drive my car and leave away?" Lee felt that he had no choice but to stay and answer Thulen's questions.

---

[1]Defendants' exhibit No. 4 is a three-page timeline of the traffic stop. The first page chronicles the stop up until the point where Thulen returns Lee's license. The second page details Thulen's requests for consent and the period of waiting for the canine to arrive. The third page covers the period of the stop after the canine arrives. The court's direction that defense counsel circle the most relevant portion of the timeline appears to have gone unheeded, as the timeline is clean and unmarked.

¶ 15 Xiong testified that the rental agreement for the vehicle was in his name. He refused Strouss's request to search the vehicle. At no point prior to being arrested did Xiong feel free to leave the scene. He testified that if he had known he could leave, he would have.

¶ 16 Following closing arguments, the circuit court took the matter under advisement. Seventeen months later, the court issued an order granting defendants' motions. Though the order contained no explicit factual findings, it did find that the initial stop was lawful and that the officers did not have reasonable, articulable suspicion of other criminal activity. The evidence was suppressed on the grounds that the officers impermissibly prolonged the stop. The State appealed.

¶ 17 ANALYSIS

¶ 18 On appeal, the State argues that the circuit court erred in granting defendants' motions to quash arrest and suppress evidence. Specifically, the State argues that Thulen did not impermissibly prolong the traffic stop because the encounter became consensual after he gave Lee the warning ticket, and defendants were therefore not seized from that point onward. Alternatively, the State argues that the circuit court erred in admitting defense counsel's timeline of the traffic stop into evidence.

¶ 19 I. Search and Seizure

¶ 20 We apply a two-prong standard of review to the circuit court's ruling on a motion to suppress evidence. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). We defer to the circuit court's findings of fact except where they are contrary to the manifest weight of the evidence. *Id.* The ultimate decision of whether or not suppression is warranted is a question of law that we review *de novo. People v. Harris*, 228 Ill. 2d 222, 230 (2008).

¶ 21    The fourth amendment of the United States Constitution and article I, section 6, of the Illinois Constitution protect individuals from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. Not every police-citizen encounter, however, constitutes a seizure. *Immigration & Naturalization Service v. Delgado*, 466 U.S. 210, 215 (1984). "Courts have divided police-citizen encounters into three tiers: (1) arrests, which must be supported by probable cause; (2) brief investigative detentions, or '*Terry* stops,' which must be supported by a reasonable, articulable suspicion of criminal activity; and (3) encounters that involve no coercion or detention and thus do not implicate fourth amendment interests." *Luedemann*, 222 Ill. 2d at 544.

¶ 22    Defendants agree that the traffic stop in the present case was lawful—based upon Thulen's probable cause to believe a traffic violation had occurred—up until the point that Thulen issued Lee a warning ticket. The State agrees that, at that point, Thulen had neither probable cause nor a reasonable, articulable suspicion upon which defendants could be detained. Thus, the issue turns upon whether the encounter from that point forward was consensual.

¶ 23    "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). The *Mendenhall* court went on to list four factors that may be indicative of seizure: (1) the threatening presence of multiple officers, (2) the display of a weapon by an officer, (3) some physical touching of the person, and (4) the use of language or tone of voice indicating that compliance might be compelled. *Id.* Subsequently, our supreme court has noted that the factors are not exhaustive, and that "a seizure can be found on the basis of other coercive police behavior that is similar to the *Mendenhall* factors." *Luedemann*, 222 Ill. 2d at 557.

7

¶ 24    We need not venture outside the four factors enumerated in *Mendenhall* to find the most compelling in the present case. Thulen yelled "[h]ey, no talking" at defendants, a plain example of "the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.* at 553. Not only was Thulen's statement made in a loud and controlling voice, but the substance of that statement was in the nature of an order, dictating what defendants may or may not do. Moreover, the order was accompanied by Thulen gesturing for Lee to come to him and, later, a direction that Lee look at Thulen. In a short span of time, toward the very beginning of the purportedly consensual portion of the stop, Thulen had thus made a number of demands of Lee. A reasonable person would not believe that he was allowed to leave the scene completely if he was not even allowed to speak to his friend.

¶ 25    In its initial brief, the State ignores Thulen's command that defendants not speak, only describing Thulen's tone and language as "respectful, polite, and deferential to [defendants'] wishes as to whether they would remain on the scene." In its reply brief, the State simply asserts that Thulen's command "was merely for officer safety." To be sure, this court recognizes an officer's need to protect himself or herself by preventing individuals from communicating in a language that the officer does not understand. However, Thulen did not calmly ask defendants to speak in English. Instead, he loudly ordered them to stop speaking completely. Thulen himself testified that he erred in delivering the command that he did, admitting that he should have asked defendants to speak in English. Again, a reasonable person who has been forcefully commanded by an officer to stop speaking would not feel free to enter his vehicle and drive off.

¶ 26                                    II. Evidence

8

¶ 27    The State next argues that the circuit court abused its discretion by admitting defense counsel's timeline of the traffic stop into evidence. The State insists that the timeline should have been excluded for a lack of relevance.

¶ 28    Defendants assert that, regardless of whether the circuit court abused its discretion in admitting the timeline, any such error was harmless. The State makes no response to this argument. We find that the timeline was nothing more than a basic guide to the relevant times in the 30-minute-plus traffic video. It provides no actual substantive evidence that may not also be found in the video itself. Thus, even if the circuit court erred by admitting the timeline, that error was harmless beyond a reasonable doubt.

¶ 29                                          CONCLUSION

¶ 30    For the foregoing reasons, we affirm the judgment of the circuit court of Henry County.

¶ 31    Affirmed.