**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230163-U

Order filed July 19, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) ) | Appeal No. 3-23-0163 Circuit No. 22-CF-746 |
| JAVONTA L. DAVIS, | ) ) | Honorable Kathy S. Bradshaw-Elliott, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Justices Hettel and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:   The circuit court did not err in granting defendant's motion to suppress evidence. Affirmed.

¶ 2    The State appeals the Kankakee County circuit court's order granting a motion to suppress evidence filed by defendant, Javonta L. Davis. The State contends that the search of defendant's person was a lawful protective pat down not designed to gather evidence. Alternatively, the State argues that the evidence obtained following the illegal search was sufficiently attenuated to defeat the exclusionary rule. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4          On December 9, 2022, defendant was charged by information with two counts of unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(2)(A), (c)(1.5) (West 2022)), one count of unlawful possession of methamphetamine with intent to deliver (720 ILCS 646/55(a)(2)(B) (West 2022)), two counts of unlawful possession of a controlled substance (720 ILCS 570/402(a)(2)(A), (c) (West 2022)), one count of unlawful possession of methamphetamine (720 ILCS 646/60 (West 2022)), and two counts of resisting a peace officer (720 ILCS 5/31-1(a-7) (West 2022)).

¶ 5          On January 23, 2023, defendant indicated in open court his desire to pursue a motion to suppress hearing and the matter was continued for defendant to file his motion. On January 27, 2023, the court ordered that defendant be allowed to view certain videos in anticipation of the motion to suppress hearing, which the trial court set for February 14, 2023.

¶ 6          At the February 14, 2023, hearing, Officer Kyle Jensen was called by defendant to testify. Body camera videos depicting the stop and subsequent interactions between Jensen and defendant were provided to the court prior to the hearing. Jensen's testimony and the body camera videos disclosed the following: Jensen was alone when he initially pulled over defendant's vehicle on December 8, 2022, because the vehicle did not have a front plate. Sergeant Belcher arrived shortly after the vehicle was stopped. Upon pulling over, defendant placed his arm outside the vehicle's window. Jensen's first question to defendant was, "You got a gun in there?" Jensen testified that he was "[j]ust joking around with [defendant]." Jensen proceeded to ask defendant whether he had a driver's license and insurance. Defendant explained that he had a photograph of his license, the vehicle belonged to his cousin, and defendant was uncertain whether it was insured. Jensen and

2

defendant had previous interactions, including an interaction earlier that day, where Jensen stated defendant was "mean mugging" him and gave him "the finger."

¶ 7    Jensen stated that he did not need to see a photograph of defendant's license, then asked defendant why he had given him "the finger" earlier that day. Defendant explained he was joking with Jensen. Jensen then asked defendant if he had anything in his vehicle. Defendant replied, "No, man." Jensen asked if he could look through the vehicle. Defendant stated the car was not his, and he "would have kept going if [he] had something" in the vehicle. The conversation continued, with Jensen asking again whether defendant had anything in the vehicle, and then asking two more times whether defendant had "dope" on him. Defendant denied that there was anything in the vehicle or on his person. Jensen then asked, "No pistols in here?" and defendant replied, "No sir, I would have ran."

¶ 8    Jensen then said, "So what's the issue with me looking through it then real quick? I'll get you out of here, three fucking minutes, man," to which defendant replied, "Because it ain't even that serious. I'll get out though. I'm opening the door, man." Defendant then opened the door of the vehicle and stepped out. Jensen turned defendant's body around and began conducting a pat down of defendant. Jensen conducted the pat down "[f]or safety," stating he was "looking for a weapon." Initially, defendant's hands were on the hood of the vehicle. Jensen patted down defendant's clothing, including his jacket and sweatpants. Jensen also patted defendant's "crotch area" through his clothing and felt a "bulge." Jensen believed the bulge to be narcotics, so he placed defendant under arrest. Belcher approached to assist with the arrest, and Jensen told defendant, "I can feel it, dude."

¶ 9    As Jensen began placing defendant's hands behind his back, defendant resisted, struggling against the officers, causing defendant, Jensen, and Belcher to fall to the ground. While on the

3

ground, Jensen and Belcher gained control of defendant and placed him in handcuffs. Jensen stated, "He's got dope. It's in his pants. In his underwear." Jensen then searched defendant again, including lifting up defendant's shirt and patting down defendant's legs without finding anything. Defendant was brought to his feet after which he attempted to flee after being searched a second time. Belcher managed to apprehend defendant before he escaped custody. Jensen placed defendant in his squad car, and Belcher called for an ambulance based on defendant's fall. While defendant was seated in the squad car, Jensen said to Belcher, "He's got it, like, tucked up in his, under his nuts."

¶ 10    Jensen conducted a search of defendant's vehicle and did not locate any drugs or weapons. Other officers arrived and asked Jensen, "Is it a gun[?]" to which Jensen replied, "No, it's dope." Jensen then returned to search defendant again, saying, "Hey, I'm gonna get what's out in your pants, okay?" Defendant said, "Look," and Jensen interrupted, saying "[L]et me get what we need to get and then we can talk, okay?" When defendant did not respond, Jensen said, "Is it in your underwear?" Defendant responded, "It wasn't nothing in my underwear." Jensen then stated, "Okay. Well, I need to get what I need to get. You hear me? That's fine. You ain't got to admit to me where it's at, but I need to get it, okay?" Jensen then searched defendant again, this time looking inside defendant's pants and underwear by pulling defendant's elastic waistband outward.

¶ 11    Jensen then began to suspect that defendant had ingested narcotics. Jensen reviewed the squad car video recording of defendant sitting in the backseat, after which Jensen searched the backseat and defendant, again finding no contraband. Law enforcement summoned an ambulance while defendant sat in the rear of Jensen's squad car for approximately 14 minutes. After an ambulance arrived, defendant remained and was treated at the scene for another 26 minutes and then taken to the hospital. Additional body camera footage documented Jensen at the hospital

cataloging various white substances. Jensen testified that he searched defendant's jacket in the hospital and felt a "bulge at the bottom in the middle of the back of the jacket." Jensen then removed what he determined to be drugs through holes in the jacket's pocket and back.

¶ 12　　Following the hearing, the trial court granted the motion to suppress, finding two constitutional violations. The first occurred when Jensen impermissibly searched defendant's crotch area while conducting the initial pat down for officer safety. The second occurred when Jensen searched defendant's vehicle without consent or probable cause. The court observed that, although there was probable cause to pull defendant over, the stop was "pretextual," and defendant did not consent to any of the searches. The court found that the drugs that were eventually found at the hospital were the fruit of the poisonous tree and suppressed that evidence.

¶ 13　　The State filed a motion to reconsider, maintaining that the search of the vehicle was consensual but arguing that "consent to search the vehicle is not the issue in this case." Rather, the State argued that, during the pat down, Jensen felt something in defendant's crotch area and attempted to handcuff defendant, but defendant began to wrestle and struggle with Jensen. The State further argued that "[i]t wasn't until the defendant was placed under arrest for resisting arrest and put into the back of the squad car that Deputy Jensen searched inside of the defendant's clothing for the contraband that Deputy Jensen felt during the pat down" and that the subject narcotics were located on defendant's person, not inside the vehicle. Accordingly, the State argued, "Even if this Honorable Court believes that the search of the vehicle was not consensual, the narcotics found in the coat that the defendant was wearing when he was arrested for resisting arrest should not be suppressed." The court denied the State's motion to reconsider, after which the State filed a certificate of impairment and this timely appeal.

¶ 14　　　　　　　　　　　　　　　　　II. ANALYSIS

5

¶ 15    On appeal, the State contends there were no fourth amendment violations and the trial court erred when it granted defendant's motion to suppress. In the alternative, the State maintains the evidence discovered was sufficiently attenuated from any unconstitutional activity to avoid the exclusionary rule. We apply a bifurcated standard of review to rulings on motions to suppress. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). We defer to the trial court's factual findings unless they are against the manifest weight of the evidence. *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). Factual findings are only against the manifest weight "if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *Id.* We review the ultimate legal issue—whether suppression is warranted—*de novo*. *People v. Lee*, 2018 IL App (3d) 170209, ¶ 20.

¶ 16    Both the United States and Illinois Constitutions protect individuals from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. Defendant does not contest the propriety of the initial stop of his vehicle for the front plate violation; rather, at issue is the constitutionality of a series of searches that occurred after the vehicle was properly stopped and, more specifically, whether contraband ultimately recovered from defendant's jacket in the hospital was properly suppressed as fruit of the poisonous tree.

¶ 17    Considering first the propriety of Jensen's pat-down search of defendant's crotch area, we note that the validity of an investigatory stop is a distinct and separate inquiry from whether a pat-down search for weapons is valid. *People v. Galvin*, 127 Ill. 2d 153, 163 (1989). That an officer has reason to stop a person does not automatically justify the further intrusion of a search for weapons. *Id.* at 165. An officer may initiate such a search if he "reasonably suspects that he or another is in danger of attack." 725 ILCS 5/108-1.01 (West 2022); *People v. Holliday*, 318 Ill. App. 3d 106, 111 (2001). In such circumstances, an officer may " 'tak[e] steps to assure himself

6

that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him.' " *People v. Colyar*, 2013 IL 111835, ¶ 34 (quoting *Terry v. Ohio*, 392 U.S. 1, 23 (1968)).

¶ 18 Assuming for the sake of analysis that Jensen was justified in conducting a pat-down search for officer safety due to defendant placing his arm outside of the car at the initial stages of the stop and his abrupt exiting of the vehicle without request, it nevertheless remains that the scope of such that search must be narrowly tailored to actions reasonably likely to discover weapons that could be used to harm the officer. *Terry*, 392 U.S. at 29. An officer may lawfully pat down a suspect's outer clothing and seize objects whose mass or contour make them readily identifiable as a weapon or contraband. *Minnesota v. Dickerson*, 508 U.S. 366, 375-76 (1993); *People v. Kowalski*, 2011 IL App (2d) 100237, ¶ 12. A search that exceeds this scope and strays into evidence gathering is constitutionally prohibited (*Minnesota*, 508 U.S. at 373), and the fruits of such a search will be suppressed. *People v. Sorenson*, 196 Ill. 2d 425, 432 (2001).

¶ 19 While it is true that individuals subject to protective pat downs may sometimes hide weapons in their pants, the trial court found that the search in this case, beginning with the initial pat down, was more intrusive than an ordinary search for weapons justified by officer safety concerns. See *Holliday*, 318 Ill. App. 3d at 112-13 (finding the search of a defendant's crotch area unconstitutional due to a heightened privacy interest in a person's sex organs). Further, the trial court found that Jensen's assertion that the pat down was conducted exclusively for officer safety was belied where, prior to defendant's exiting the vehicle, he had asked defendant about drugs multiple times. Immediately after patting down defendant, Jensen told Belcher, "He's got drugs. It's in his pants. In his underwear."

7

¶ 20    Under these circumstances, we cannot say the trial court's finding that Jensen was searching for drugs and not weapons when he patted down defendant's crotch area was against the manifest weight of the evidence. A search for weapons must be limited to "an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry*, 392 U.S. at 29. Here, the court found that Jensen's pat down of defendant's crotch area exceeded that scope. Accordingly, the trial court's determination that the pat down of defendant's crotch area violated defendant's fourth amendment rights was not erroneous.

¶ 21    The State also contends that the trial court erred in determining that the search of defendant's vehicle likewise violated defendant's fourth amendment rights. In support, the State observes that a vehicle may be searched incident to arrest where " 'officers reasonably believe evidence relevant to the crime of arrest may be found in the vehicle.' " *People v. Bridgewater,* 235 Ill. 2d 85, 94-95 (2009). It was implausible, however, that evidence concerning no front plate or resisting arrest would be located in the vehicle. Further, given the lack of probable cause for defendant's arrest for possession of narcotics prior to the discovery of narcotics at the hospital, it was likewise unreasonable to believe evidence of narcotics would be located in the vehicle. Additionally, defendant was handcuffed in Jensen's squad car where he remained as Jensen left to search defendant's vehicle, otherwise precluding the search of his vehicle incident to arrest. *Arizona v. Gant,* 556 U.S. 332, 344 (2009). Accordingly, we agree with the trial court's assessment that the vehicle search was also a fourth amendment violation.

¶ 22    Evidence obtained in violation of the fourth amendment is generally inadmissible under the exclusionary rule. *People v. Lozano*, 2023 IL 128609, ¶ 44. Once a court determines there has been a fourth amendment violation, the violation is deemed a "poisonous tree," and evidence obtained by exploiting that violation is subject to suppression as "fruit" of the poisonous tree. *Id.*

8

To the extent we conclude the circuit court's findings of fact are not against the manifest weight of the evidence, we further conclude that it did not err in suppressing the contraband located on defendant's person at the hospital as fruit of the poisonous tree.

¶ 23    In reaching this conclusion, we reject the State's request to consider whether the evidence seized was sufficiently attenuated from the constitutional violations to excuse its suppression. See *United States v. Crews*, 445 U.S. 463, 471 (1980) (courts may consider "whether the chain of causation proceeding from the unlawful conduct has become so attenuated or has been interrupted by some intervening circumstance so as to remove the 'taint' imposed upon that evidence by the original illegality."). The State acknowledges that it "never presented the argument of attenuation below," but notes that "forfeiture is a limitation on the parties and not the reviewing court." See *People v. Kurzeja*, 2023 IL App (3d) 230434, ¶ 9 (reviewing court may overlook the principles of forfeiture when necessary to obtain a just result or maintain a sound body of precedent). However, beyond noting the possibility that we might excuse its forfeiture, the State has not provided any argument in support of doing so. See *People v. Leach*, 245 Ill. App. 3d 644, 657 (1993) (the State forfeited attenuation by not raising it in the circuit court after the court determined that defendant's arrest was unlawful).

¶ 24                                III. CONCLUSION

¶ 25    The judgment of the circuit court of Kankakee County is affirmed.

¶ 26    Affirmed.